# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ARcare, Inc., an Arkansas Corporation, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>Centor US Holding, Inc; and Centor, Inc.<br><br>      Defendant. | No. 3:17-cv-891<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

  Plaintiff, ARcare, Inc. ("Plaintiff"), on behalf of itself and all others similarly situated, brings this Complaint against Defendant Centor US Holding, Inc. and Defendant Centor, Inc. (collectively "Centor" or "Defendants") for violations of the federal Telephone Consumer Protection Act. Plaintiff seeks certification of its claims against Defendants as a class action. In support, Plaintiff states as follows:

### INTRODUCTION

  1. This case challenges Defendants' policy and practice of faxing advertisements without obtaining Plaintiff's prior express permission beforehand. Defendants faxed at least two unsolicited and unwanted advertisements to Plaintiff which are attached as Exhibits A and B, and on information and belief sent significantly more unsolicited faxes to Plaintiff.

  2. Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the fast-growing expansion of the telemarketing industry. As is pertinent here, the TCPA and its implementing regulations prohibit persons within the United States from sending advertisements via fax.

  3. Junk faxes disrupt recipients' peace, drain recipients' paper, ink, and toner, and cause recipients tangible damages. Junk faxes also cause recipients to waste valuable time

1

retrieving and discerning the purpose of the faxes; prevent fax machines from receiving and sending authorized faxes; and cause undue wear and tear on recipients' fax machines. Plaintiff offers pharmaceutical services and must use its fax machine to receive communications about patients. That purpose is impeded when Plaintiff's fax machine is invaded by junk faxes. As recognized by Congress in enacting the TCPA, junk faxes are a significant problem interfering with modern commerce. As discussed below, this is particularly true for health care providers like ARcare, which still rely significantly on faxes to communicate vital information about patients such as prescriptions and insurance information.

4. ARcare is a healthcare provider that was established in 1986. ARcare provides medical and pharmacy services through its more than thirty locations, which are primarily in rural areas in Arkansas. ARcare operates family practices, specialized medical care such as cardiology and chronic disease treatment, dental practices, and pharmacies. As a medical provider, ARcare relies upon fax machines to operate and provide services to its patients. ARcare conservatively estimates that it receives several thousand unwanted and unsolicited faxes each year. ARcare must wade through dozens of unsolicited faxes from pharmaceutical and other companies selling their products to find vital incoming faxes, such as prescription refills and insurance authorizations. It was this harm that Congress recognized in passing the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1]

---

[1] "Unsolicited advertising is beginning to clog fax lines, restricting the owners' ability to use their machines for the purposes they originally bought them for and generating operating costs the users can't control. Unlike junk mail, which can be discarded, or solicitation phone calls, which can be refused or hung up, junk fax ties up the recipient's line until it has been received and printed. The recipient's machine is unavailable for business and he or she incurs the high cost for supplies before knowing whether the message is either wanted or needed." 135 Cong. Rec. E 1462 (May 2, 1989, statement of Rep. Edward Markey, 101 Cong.) Representative Markey further testified: "To quote an article from the Washington Post, 'receiving junk fax is like getting junk mail with postage due.' Succinctly put, using a facsimile machine to send unsolicited advertising not only shifts costs from the advertiser to the recipient, but keeps

5. The TCPA provides a private right of action and statutory damages of $500 per violation, which may be trebled when the violation is willing or knowing.

6. On behalf of itself and all others similarly situated, Plaintiff brings this case under the TCPA to recover declaratory relief, damages for violations of the TCPA, and an injunction prohibiting Defendants from future TCPA violations.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendants because they operate their businesses in Ohio.

8. This Court has subject-matter jurisdiction over Plaintiff's TCPA claim pursuant to 28 U.S.C. § 1331.

9. Venue in this district is proper because this is the district in which Defendants resides

## PARTIES

10. Plaintiff ARcare is an Arkansas non-profit corporation located in Augusta, Arkansas.  ARcare owns and operates more than 30 fax machines as part of its pharmaceutical, primary care and administrative operations.

11. Defendant Centor US Holdings, Inc. is a company that supplies pharmacies with plastic containers for packaging drugs, which are the type of products advertised in the faxes sent to ARcare. It has its principal place of business in Perrysburg, Ohio, and is organized under the laws of Delaware. Upon information and belief, Defendant Centor US Holdings, Inc. directs, controls, and/or supervises Defendant Centor, Inc.'s actions, including its business activities.

---

an important business machine from being used for its intended purpose." 136 Cong. R. H 5818 (July 30, 1990), 101st Cong. 2nd Sess., statement of Rep. Markey, p. 5).

3

12. Defendant Centor, Inc. is a company that supplies pharmacies with plastic containers for packaging drugs. It has its principal place of business in Perrysburg, Ohio, and is organized under the laws of Delaware. Upon information and belief, Defendant Centor, Inc.'s actions are directed, controlled, and/or supervised by Defendant Centor US Holdings, Inc., including its business activites.

13. Further reflecting the interrelatedness of the Centor-affiliated entities, a press release issued by a company that acquired Defendant Centor US Holdings, Inc. announced that:[2]

> Gerresheimer has reached an agreement with Nemera Development S.A. to acquire 100% of the share capital of Centor US Holding Inc. "Centor is the highly profitable market leader for plastic vials and closures in the prescription retail market. This is a perfect fit to extend our product offering from packaging of parenterals to the packaging of oral drugs in the US."

**FACTS**

14. During the Class Period, Defendant Centor sent at least two unsolicited advertisement to Plaintiff's ink-and-paper facsimile machine. *See* attached Exhibits A and B[3]. These two faxes were sent to ARcare's fax number (870) 347-2882. Each of the faxes sent by Centor display a single corporate logo, and direct the recipient to contact the company at a single phone number. The fax attached as Exhibit A refers to itself as a "Prescriptionware Ordering Guide," and displays various vials available for sale from Defendant Centor. In total, Exhibit A includes 33 different products or sizes manufactured and sold by Centor. Exhibit B advertises Centor's "Screw-Loc Closures, including seven different sizes. Exhibit B also includes the

---

[2] The full release can be found at http://www.prnewswire.com/news-releases/gerresheimer-will-acquire-centor---higher-profitability-expected-518746931.html.

[3] The two faxes sent by Centor attached as Exhibits A and B were sent to ARcare's pen and ink facsimile machine, whereby an ARcare employee removed the faxes from the fax machine and maintained them in a box devoted to storing junk faxes. The faxes were received by ARcare in the first quarter of 2017, though an exact date is not known as the box containing junk faxes is not checked daily. A box to collect junk faxes was placed at each ARcare fax machine in 2016 as a response to the growing frustration with the onslaught of daily junk faxes.

virtures of buying Centor's product including "easy stocking" "inventory management" and "less waste." Centor sent these faxes to ARcare for the purpose of advertising its products.

15. Each of the faxes sent by Centor direct the recipient to Centor's website (www.centorrx.com) and to contact Centor by phone at 1-800-321-3391. This phone number is Centor's customer service line. *See* Exhibit C, a copy of the "Contact Us" page from Centor's website.

16. While Plaintiff only retains two faxes from Centor in its possession, upon information and belief, Plaintiff has received multiple fax advertisements from Centor. The majority of junk faxes received by ARcare, similar to those received by all Class Members, are immediately thrown into the trash. Accordingly, not all faxes received by ARcare during the statutory period have been retained. Exhibits A and B are similar to these additional faxes, because upon information and belief, Centor sent additional unsolicited faxes advertising its products but not necessarily these *exact* faxes.

17. A majority of faxes received by ARcare contain a fax header which includes the name and number of the sender, and the time the fax was transmitted. However, the sender of a fax has the ability to prevent such fax header information from being included on a facsimile.[4] In this instance, Centor chose not to apply headers to the facsimile advertisements sent to Plaintiff's fax machines, despite this omission being a violation of 47 U.S.C. Section 227(d)(1)(B).

18. One of the advertisements sent by Centor, attached as Exhibit B, includes a box at the bottom indicating that the facsimile was "provided by McKesson Manufacturer Marketing, a division of McKesson Specialty Health Pharmaceutical & Biotech Solutions, LP." McKesson states on its website that it offers its manufacturing clients like Centor "the ability to leverage our

---

[4] *See, generally*, https://files.support.epson.com/htmldocs/art837/art837ug/source/faxing/tasks/setup_fax_buttons_header_art837.html.

customer base of thousands of pharmacies, hospitals and specialty-care providers nationwide to help expand your market opportunities . . ." *See* Exhibit D.

19. Based upon the foregoing, Plaintiff believes that Centor hired McKesson Manufacturer Marketing to send the faxes attached as Exhibit A and B to market Centor's products to McKesson's "customer base of thousands of pharmacies," which included ARcare. The faxes do not direct potential consumers to contact McKesson or any other entity, but rather to contact Centor at the number and website it advertises all of its customers to use. There is no economic incentive for McKesson, or any other entity, to create and send a fax advertising Centor's products, and directing consumers to Centor's sales chain, without Centor authorizing such acts.

20. One does not have to "push send" on the fax machine to be a sender under the TCPA. The TCPA defines a sender as either "the entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10) (the "Sender Regulation."). The faxes sent to ARcare advertised the goods of Centor, and requested that the recipient contact Centor to place an order to buy Centor's goods. The Sender Regulation makes a person liable as the sender of a fax so long as the faxes were sent on that person's behalf. *See, e.g. Palm Beach Golf Center-Boca, Inc. v. Sarris*, 782 F. 3d 1245, 1254 (11th Cir. 2015).

21. ARcare has received unsolicited faxes from at least two other companies which likewise claim to be sent by McKesson Manufacturer Marketing. *See* Exhibits E and F. Similar to Exhibits A and B advertising Centor products, in each of these faxes there was not a fax header on the faxes received.

22. Centor did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine. Likewise, Plaintiff did not provide consent to McKesson to send these faxes.

## **CLASS ALLEGATIONS**

23. The purpose of a fax marketing campaign such as Exhibits A and B is to cast a wide net to potential customers, understanding that there is a low percentage of recipients that will actually respond. CITE TO CASE OR LEGISLATIVE HISTORY. For this reason, Plaintiff believes that many other pharmacies and medical providers received unsolicited faxes from Centor similar to Exhibits A and B during the last four years.

24. In accordance with Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of the following class of persons (the "Class"):

> All persons and entities who held telephone numbers that received one or more telephone facsimile transmissions that promoted the commercial availability or quality of property, goods or services offered by "Centor during the statutory period of four years prior to July 28, 2017."

25. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is proper, as more information is gleaned in discovery.

26. Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of any such person. Also excluded are any judge who may preside over this case and any attorneys representing Plaintiff or the Class.

27. <u>Numerosity [Fed R. Civ. P. 23(a)(1)]</u>. The Members of the Class are so numerous that joinder is impractical. Upon information and belief, Defendants have sent illegal fax advertisements to hundreds if not thousands of other recipients.

28. <u>Commonality [Fed. R. Civ. P. 23(a)(2)]</u>. Common questions of law and fact apply to the claims of all Class Members and include (but are not limited to) the following:

   a. Whether Defendants sent faxes promoting the commercial availability or quality of property, goods, or services;

   b. The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent the faxes attached as <u>Exhibits A and B</u> to Plaintiff's Class Action Complaint and other unsolicited fax advertisements;

   c. Whether Defendants faxed advertisements without first obtaining the recipient's express permission or invitation;

   d. Whether Defendants sent fax advertisements knowingly or willfully;

   e. Whether Defendants violated 47 U.S.C. § 227;

   f. Whether Plaintiff and the other Class members are entitled to statutory damages;

   g. Whether the Court should award trebled damages; and

   h. Whether Plaintiff and the other Class Members are entitled to declaratory, injunctive, or other equitable relief.

29. <u>Typicality [Fed. R. Civ. P. 23(a)(3)]</u>. Plaintiff's claims are typical of the claims of all Class Members. Plaintiff received unsolicited fax advertisements from Defendants during the Class Period. Plaintiff makes the same claims that it makes for the Class Members and seeks

the same relief that it seeks for the Class Members. Defendants have acted in the same manner toward Plaintiff and all Class Members.

30. <u>Fair and Adequate Representation [Fed. R. Civ. P. 23(a)(4)]</u>. Plaintiff will fairly and adequately represent and protect the interests of the Class. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the Class.

31. <u>Predominance and Superiority [Fed. R. Civ. P. 23(b)(3)]</u>. For the following reasons, common questions of law and fact predominate and a class action is superior to other methods of adjudication:

(a) Proof of Plaintiff's claims will also prove the claims of the Class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Defendants may assert will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

(c) Defendants have acted and continue to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d) The amount likely to be recovered by individual Members of the Class does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based on common proofs;

(e) This case is inherently well-suited to class treatment in that:

(i) Defendants identified persons or entities to receive their fax transmissions, and it is believed that Defendants' computer and

business records will enable Plaintiff to readily identify Class Members and establish liability and damages;

(ii) Common proof can establish Defendants' liability and the damages owed to Plaintiff and the Class;

(iii) Statutory damages are provided for in the statutes and are the same for all Class Members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims, and it will foster economies of time, effort, and expense;

(v) A class action will contribute to uniformity of decisions concerning Defendants' practices; and

(vi) As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## **CLAIMS FOR RELIEF**

### COUNT ONE
**Violations of the Telephone Consumer Protection Act**
*47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4)*

32. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

33. The TCPA provides strict liability for sending fax advertisements in a manner that does not comply with the statute. Recipients of fax advertisements have a private right of action to seek an injunction or damages for violations of the TCPA and its implementing regulations. 47 U.S.C. § 227(b)(3).

34. The TCPA defines a sender as either "the entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). The definition encompasses two types of liability. *See Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 893 – 894 (6th Cir. 2016) ("[T]he FCC expanded the scope of liability under the TCPA. . . . [L]iability . . . would extend to both those entities 'on whose behalf the advertisement [was] sent' and those entities 'whose goods or services [were] advertised or promoted in the unsolicited advertisement . . . .'");

35. The TCPA makes it unlawful to send any "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). "Unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

36. Unsolicited faxes are illegal if the sender and recipient do not have an "established business relationship." 47 U.S.C. § 227(b)(1)(C)(i). "Established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 U.S.C. § 227(a)(2); 47 C.F.R. § 64.1200(f)(6).

37. Defendants faxed unsolicited advertisements to Plaintiff, in violation of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

11

38. Defendants knew or should have known (a) that Plaintiff had not given express invitation or permission for Defendants to fax advertisements about their services and products; and (b) that Exhibits A and B areadvertisements.

39. Defendants' actions caused actual damage to Plaintiff and the Class Members. Defendants' junk faxes caused Plaintiff and the Class Members to lose paper, toner, and ink consumed in the printing of Defendants' faxes through Plaintiff's and the Class Members' fax machines. Defendants' faxes cost Plaintiff and the Class Members time that otherwise would have been spent on Plaintiff's and the Class Members' business activities.

40. In addition to statutory damages (and the trebling thereof), Plaintiff and the Class are entitled to declaratory and injunctive relief under the TCPA.

## REQUEST FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a) Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b) Declare Defendants' conduct to be unlawful under the TCPA;

c) Award $500 in statutory damages under the TCPA for each violation, and if the Court determines the violations were knowing or willful then treble those damages;

d) Enjoin Defendants from additional violations;

e) Award Plaintiff and the Class their attorney's fees and costs;

f) Grant such other legal and equitable relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff and the Members of the Class hereby request a trial by jury.

DATED: September 29, 2017        Respectfully submitted,

By*:*    /s/  Matthew R. Wilson

David P. Meyer (Ohio Bar No. 0065205)
Email: dmeyer@meyerwilson.com
Matthew R. Wilson (Ohio Bar No. 0072925)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio Bar No. 0091162)
Email: mboyle@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

and

Randall K. Pulliam, Esq. (admitted pro hac vice)
Email: rpulliam@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th Street
Little Rock, Arkansas 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

13